UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

In Re: )
) No. 06-01195-PCW13
DAVID JOHN CASEY, )
) MEMORANDUM DECISION RE:
Debtor. ) CONFIRMATION OF PLAN
_____)

PATRICIA C. WILLIAMS, Presiding Judge

This case challenges the Court to define the role to be played by the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form B22C) in determining whether a Chapter 13 debtor has proposed a plan which will pay all projected disposable income as required by 11 U.S.C. § 1325(b)(1). The challenge arose from the Trustee's objection to confirmation of this debtor's proposed Chapter 13 plan.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA") in 11 U.S.C. § 1325(b)(1) requires that all "projected disposable income" be devoted to a plan for payment of unsecured creditors. The word "projected" is an adjective which modifies the term "disposable income," itself a defined term under BAPCPA. That term is defined in § 1325(b)(2) which states that the term ". . . means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor . . . ." Current monthly income is funds received within six months of the commencement of the case, less certain types of

MEMORANDUM DECISION RE: . . . - 1

funds. 11 U.S.C. §§ 101(10)(A) and (10)(B). The determination of which expenses are reasonably necessary is required to be made in accordance with subparagraphs (A) and (B) of 11 U.S.C. § 707(b)(2).

11 U.S.C. § 707(b)(2) contains what is commonly referred to as the "means test." That test calculates the debtor's monthly income in a manner very different than the calculation performed prior to BAPCPA. Historically, all funds received by a debtor at the time of the commencement of the case were considered income, whether in the form of wages, annual bonus, retirement pension payments, child support or some other form. Under BAPCPA, not only is the prior six months of income averaged, certain types of funds received are not included as income. This debtor, prior to the enactment of BAPCPA, would have been considered to receive significantly greater income than after the enactment of BAPCPA. Calculated as required by BAPCPA, the debtor's monthly income is $4,965, and annual income is $59,580. Actual income received each month totals $6,761, and annual income totals $81,132. Under either calculation, the debtor is an above-median income debtor as that term is used in BAPCPA. This dispute, however, does not involve questions arising on the income side of the calculations necessary to determine disposable income, but on the expense side.

As to above-median income debtors, the means test defines a debtor's expenses based upon a formula found in 11 U.S.C. § 707(b)(2)(A)(ii)(I).

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the

MEMORANDUM DECISION RE: . . . - 2

debtor, the dependents of the debtor, and the spouse of
the debtor in a joint case, if the spouse is not
otherwise a dependent. Such expenses shall include
reasonably necessary health insurance, disability
insurance, and health savings account expenses for the
debtor, the spouse of the debtor, or the dependents of
the debtor. Notwithstanding any other provision of this
clause, the monthly expenses of the debtor shall not
include any payments for debts. In addition, the
debtor's monthly expenses shall include the debtor's
reasonably necessary expenses incurred to maintain the
safety of the debtor and the family of the debtor from
family violence as identified under section 309 of the
Family Violence Prevention and Services Act, or other
applicable Federal law. The expenses included in the
debtor's monthly expenses described in the preceding
sentence shall be kept confidential by the court. In
addition, if it is demonstrated that it is reasonable and
necessary, the debtor's monthly expenses may also include
an additional allowance for food and clothing of up to 5
percent of the food and clothing categories as specified
by the National Standards issued by the Internal Revenue
Service.

Subsequent subparts of § 707(b) further describe additional expenses which may be considered and allow adjustment of certain categories of the IRS expenses used in the formula. Bankruptcy Rule 1007(b)(6) requires debtors to file a Form B22C, which is an attempt to reduce the complicated provisions of § 707(b)(2) into a question and answer format comprehensible to debtors. Bankruptcy Rule 1007(b)(6) is necessary as the 2005 amendments to § 1325 require that determination of disposable income start with current monthly income.

The Form B22C filed by this debtor calculates monthly expenses of $5,505.90, however the debtor's actual monthly expenses according to Schedule J are $4,780.32. In this District, it is common that application of the Internal Revenue Service standards required by the means test will result in expenses which are greater than the actual expenses of debtors. The Trustee's objection to confirmation is based primarily upon the argument that

MEMORANDUM DECISION RE: . . . - 3

by requiring unsecured creditors be paid "projected disposable income" under § 1325(b)(1) rather than "disposable income" referenced in (b)(2), Congress contemplated adjustments to the expenses listed in Form B22C and the means test. Simply stated, the Trustee argues that the actual expenses of the debtor should play a role in the determination of "projected disposable income."

**1. What constitutes projected disposable income under 11 U.S.C. § 1325(b)(1)?**

Congress has defined the term "disposable income." Not all disposable income must be devoted to payment of unsecured creditors, but only the type of disposable income which falls within the definition of "projected." The addition of the adjective "projected" in § 1325(b)(4), requiring projected disposable income be devoted to unsecured creditors, further defines the type and nature of the disposable income considered for confirmation. The word "projected" means to plan, figure, or estimate for the future. *Webster's II New College Dictionary* 884 (1995). It is a forward-looking concept. It requires a court to examine anticipated disposable income rather than historical disposable income, estimated disposable income, or some other type of disposable income.[1] The requirement to devote projected or anticipated disposable income to unsecured creditors is a recognition that Chapter 13 plans are in effect for some years and

---

[1] There may be situations where a debtor's financial circumstances changed during the six month period preceding commencement of the case. If so, the Form B22C calculation of income may not be a reliable indication of anticipated future income. That situation does not exist in the current controversy, and this opinion does not address any issues which might arise in such a situation.

MEMORANDUM DECISION RE: . . . - 4

that the financial circumstances of individuals change. The time
of occurrence or extent of those changes may be known at the time
the case is filed, at the time of confirmation, or at some time
later in the case. To the extent the changes can be reasonably
anticipated at the time of confirmation, they must be considered as
they are "projected." The presence of expected or even known
changes of financial circumstances does not, however, modify the
calculation of disposable income under § 707(b). If no changes in
financial circumstances are reasonably anticipated at the time of
confirmation, the projected disposable income referenced in (b)(1)
will be the same as the disposable income referenced in (b)(2).

This Court is in agreement with the analysis of "projected
disposable income" required under § 1325(b)(1) as contained in
*In re Jass,* 340 B.R. 411 (Bankr. D. Utah 2006).

> The Court believes that the language of <u>§ 1325(b)(1)(B) is clear and unambiguous</u> - *section 1325(b)(1)(B)*'s requirement that a plan propose to pay "projected disposable income" means that the number resulting from <u>Form B22C is a starting point for the Court's inquiry only</u>. *Section 1325(b)(2)* defines "disposable income" but *§ 1325(b)(1)(B)* requires that a debtor propose a plan paying "*projected* disposable income." (emphasis added). The Court must give meaning to the word "projected," as it obviously has independent significance. The word "projected" means "to calculate, estimate, or predict (something in the future), based on the present data or trends." Thus, the word "projected" is future-oriented. By definition under *§ 1325(b)(2)*, the term "disposable income" is oriented in historical numbers. By placing the word "projected" next to "disposable income" in *§ 1325(b)(1)(B)*, Congress modified the import of "disposable income." The significance of the word "projected" is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with *§ 1325(b)(1)(B)*.
>
> To require all debtors to propose plans paying the number resulting from Form B22C would essentially ignore the word "projected" and give meaning only to the term "disposable income." The only way for the word "projected" to have independent significance is if the

MEMORANDUM DECISION RE: . . . - 5

> word modifies the term "disposable income."
>
> Thus, the Court concludes that the plain meaning of § 1325(b) is dispositive of this issue. Under the clear meaning of the statute, a debtor must propose to pay unsecured creditors the number resulting from Form B22C, unless the debtor can show that this number does not adequately represent the debtor's budget projected into the future.

*Jass, supra*, at 415-416 (footnotes omitted) (emphasis added); see also *In re Fuller*, 346 B.R. 472, 479 (Bankr. S.D. Ill. 2006).

> After examining the new statute and case law concerning § 1325(b)(1) and (b)(2), this court determines to follow the clearly emerging line of authority. It finds that the historical "disposable income" calculation newly created under § 1325(b)(2) is not dispositive of the "projected disposable income" amount needed to fund a chapter 13 plan. It agrees with those cases finding that "projected disposable income" is different from "disposable income" and that Congress, by leaving the word "projected" in § 1325(b)(1)(B), intended a distinction between the terms.

*In re Foster*, 2006 Bankr. Lexis 2259, at *21 (Bankr. N.D. Ind. Sept. 11, 2006).

The conclusion that the term "projected disposable income" has a meaning different than the term "disposable income" is required by the long-standing rule of statutory construction that every word in a statute is to be given effect. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 834 (9th Cir. 1996).

In the situation now under consideration, absent one item addressed below, there is no indication that the debtor's financial circumstances will change. Thus, the "disposable income" reflected on the debtor's Form B22C, as adjusted below, will in reality be the debtor's "projected disposable income."

The Trustee correctly argues that it has been the experience in this District that above-median income debtors will pay less to unsecured creditors under BAPCPA than under the prior law. In this

MEMORANDUM DECISION RE: . . . - 6

District, many of the standard expenses allowed by § 707(b) would have been considered unreasonable and unnecessary and would have been disallowed under the prior law, resulting in greater plan payments. But it is the prerogative of Congress to define disposable income, and it has done so. Absent bad faith, lack of feasibility, or failure to comply with other confirmation requirements, plans which propose to pay properly calculated disposable income reasonably anticipated to be received over the life of a plan will meet the requirements of § 1325(b)(1). The conclusion is that for above-median income debtors, the disposable income calculated on Form B22C, as modified by any anticipated change in financial circumstances known at the time of confirmation, constitutes "projected disposable income" for purposes of § 1325(b)(1).

**2. What are the proper calculations to be made regarding specific line items on Form B22C?**

The Trustee also objects to confirmation based upon his belief that certain expenses shown on the Form B22C have not been properly calculated. The Trustee alleges amounts entered on lines 24, 28, 29, 33, 49 and 52 of the Form B22C relating to allowed expenses are incorrect.

**Line 24**:

Line 24 allows the debtor to deduct an expense for food, clothing, personal care, etc., based upon the IRS National Standards for Allowable Living Expenses. To determine the amount of this expense, one refers to the table provided as part of the national standards and does a purely mathematical calculation based upon the number of people in the debtor's household and the

MEMORANDUM DECISION RE: . . . - 7

debtor's gross income. On the Form B22C, the debtor's calculation of monthly income of $4,965 appears on lines 9, 10, 11, 12, 14, 18 and 20.

However, the debtor has not used the monthly income figure of $4,965 appearing on the Form B22C to calculate the expense allowed on line 24. In performing the calculation of the allowed expense under the IRS table, the debtor utilizes a monthly gross income figure of $6,761, which is his actual income as revealed on the Schedule I. Neither Form B22C nor BAPCPA utilize actual monthly income to determine disposable income. Use of the higher actual income amount rather than the lesser amount of income calculated in accordance with Form B22C and BAPCPA results in a larger allowed expense under the IRS table. Utilizing the actual monthly income figure on the Schedule I, debtor claims an expense under the IRS table of $1,306, whereas use of the monthly income amount calculated in accordance with Form B22C and BAPCPA would result in an expense of $904.

The debtor argues that he is entitled to use gross income from Schedule I because the IRS table refers to "gross income," and Form B22C does not specifically refer to "gross income." However, it is obvious that the entries on those lines are gross income as the amounts on the relevant lines are "income" (as defined under BAPCPA) before any deductions.

The calculation of the amount of a debtor's "current monthly income," which results in the calculation of a debtor's disposable income, is to be made by use of Form B22C. Debtors may not "mix and match" forms. Debtor attempts to manipulate the calculations required by Form B22C and BAPCPA in his favor by using the amount

MEMORANDUM DECISION RE: . . . - 8

of his actual monthly income rather than "current monthly income" as required by BAPCPA. The expenses under Form B22C are related to the income reflected on Form B22C, not some other amount of income reflected on a different form and which is defined differently than the income on Form B22C.

The appropriate amount of the expense deduction is $904.

**Lines 28 and 29:**

Lines 28 and 29 deal with the Local Standards for Transportation ownership/lease expenses. Use of the appropriate standard results on Line 28 in an average monthly payment for the first car of $471. The average monthly payments for the second car on line 29 is $332. Debtors are to list the 60 month average of their contractually required monthly payment and then deduct the lesser of the monthly payment under the IRS standard or the average contractual payment. If the average contractual payment is greater than the IRS standard, the debtor is to deduct zero.

Debtor has two vehicles, a 2004 TX Honda motorcycle requiring average contractual payments of $219.64 and a 2004 Chevy Silverado 2500 pickup requiring average contractual payments of $855.19. Debtor lists his motorcycle as the first car and the pickup as the second car. Lines 28 and 29 on the Form B22C thus claim the following deduction for vehicle ownership expense:

```
IRS Standard First Car           $471.00
Contractual Payment              $128.12
Expense Allowed                  $342.88

IRS Standard Second Car          $332.00
Contractual Payment              $855.19
Expense Allowed                  $ - 0 -

Total Deduction for Car Ownership  $342.88
```

MEMORANDUM DECISION RE: . . . - 9

The Trustee argues that debtor has again improperly manipulated the line items on Form B22C to the debtor's advantage. It is difficult to believe that a motorcycle would be the most important or frequently used vehicle for a two-person family living in a climate such as this. Whatever the debtor's opinion as to the importance of the motorcycle, the Trustee is correct that the form itself requires that the more expensive vehicle be considered the first car. The appropriate calculation should be:

```
IRS Standard First Car           $471.00
Contractual Payment              $855.19
Expense Allowed                  $ - 0 -

IRS Standard Second Car          $332.00
Contractual Payment              $128.12
Expense Allowed                  $203.88

Total Deduction for Car Ownership  $203.88
```

**Line 33**:

Line 33 allows, as an expense, court-ordered payments to a debtor's ex-spouse or dependants. The debtor lists the amount of $600 as the court-ordered monthly payment, but admits that those payments will cease on the 24th month of the plan. However, 11 U.S.C. 707(b)(2)(A)(iv) states that "the debtor's expenses for all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60." Although the debtor argues that the total amount remaining due for support ($600 x 24 = $14,400) should not be amortized over 60 months, the statute so requires. The appropriate deduction for this line item should be $224.39.

This result is also mandated by the requirement of § 1325(b)(1) to devote all projected disposable income to the payment of unsecured creditors. The disposable income of the

MEMORANDUM DECISION RE: . . . - 10

debtor will increase in the 25th month of the plan, as the debtor will no longer have this expense.  The debtor's projected disposable income differs from disposable income in this respect and the plan payments must be adjusted accordingly in order to meet confirmation requirements.

**Line 49:**

Line 49 reveals a monthly payment of $256.55 to satisfy the priority claim of the Internal Revenue Service.  This would equal $15,393 over 60 months, but fortunately for the debtor, the Proof of Claim filed by the Internal Revenue Service reflects a total priority claim of only $13,463.33.  Averaged over 60 months, that equals $224.39, a $32.16 difference.  The debtor agrees that $224.39 is the appropriate amount for the expense item on line 49.[1]

**Line 52:**

This line is the total of all deductions and must be modified due to the above analysis.  Once expense deductions are properly calculated on Form B22C, the debtor's total deductions will decrease, potentially resulting in greater plan payments.

**3. Does § 1325(b)(4) allow an above-median debtor to propose a plan for less than five (5) years if debtor has no projected disposable income available to pay unsecured creditors under § 1325(b)(8)?**

The final basis for the Trustee's objection to confirmation is

---

[1] **Line 50** - The Trustee discovered a mathematical error made by the debtor, which error disfavored the debtor as it reduced the amount of the deduction to which the debtor was entitled. The calculation appearing on this line will change, however, due to the changes in certain lines referenced above.

MEMORANDUM DECISION RE: . . . - 11

that the debtor has not, but is required to, propose a five (5) year plan. The plan proposed by these above-median income debtors is for a term of three (3) years and will pay nothing to unsecured claims. Subsection (b) of § 1325 establishes certain requirements for confirmation, one of which is subpart (4) which requires that debtor's projected disposable income received "in the applicable commitment period" be paid to unsecured creditors through the plan. The "applicable commitment period" is defined in (4)(A) as "not less than 5 years" for above-median income debtors. The following subpart (B) then establishes an exception by stating that in situations involving above-median income debtors, plans may have less than a five (5) year term if the plan pays unsecured claims in full within a shorter period.

Despite the clarity of § 1325(b)(4), there has been controversy regarding the necessity for above-median income debtors to propose five (5) year plans if unsecured creditors will not be paid in full in less than five (5) years. Plans are to provide that all projected disposable income is to be paid to unsecured creditors through the plan. § 1325(b)(1). If completion of Form B22C demonstrates that no monthly disposable income exists which could be paid to unsecured creditors under the plan, then arguably there is no rationale for a five (5) year plan. *In re Fuger,* 347 B.R. 94 (Bankr. D. Utah 2006) involved above-median income debtors who had "negative disposable income," i.e., their Form B22C stated that monthly income was less than monthly expenses. The court concluded that the determination of "applicable commitment period" in (b)(4) was ambiguous when considered in the context of (b)(1) as the phrase could be interpreted to refer to a length of time or a

MEMORANDUM DECISION RE: . . . - 12

monetary amount. Even though the debtors proposed a plan of less than five (5) years, the plan was confirmed. The court read § 1325(b)(4) to require debtors to commit all disposable income projected to be received in five (5) years to unsecured creditors. As that amount of income was zero, the debtors could confirm a plan of less than five (5) years. *See also, In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006).

This Court perceives no ambiguity in § 1325(b)(4). Once the amount of projected disposable income has been determined, whether that be by sole reliance on Form B22C or the Schedules I and J or some other calculation, (b)(1) simply states that it must be used to pay unsecured claims for an "applicable commitment period," which, in accordance with (b)(4), is either three (3) years or five (5) years. Subpart (b)(4) makes no reference to any monetary analysis to be used in determining the length of the plan, but refers to a measurement of time. It is irrelevant whether the projected disposable income is zero or $1,000 or some other amount. If unsecured claims are not to be paid in full, the plan must have a length of three (3) years for below-median income debtors and not less than five (5) years for above-median income debtors.

The debtors in *In re McGuire,* 342 B.R. 608 (Bankr. W.D. Mo. 2006) filed a Form B22C demonstrating projected disposable income of $178.10 per month and were above-median income debtors. The proposed plan was for less than five (5) years. Finding that the plain language of (b)(4) imposed a five (5) year plan requirement, the Utah court refused to confirm the proposed plan.

The *McGuire* decision cites to the earlier decision of *In Re Schanuth,* 342 B.R. 601 (Bankr. W.D. Mo. 2006) which involved below-

MEMORANDUM DECISION RE: . . . - 13

median income debtors and thus analyzed the three (3) year plan requirement of (b)(4).

> First and foremost, the plain language of § 1325(b)(1) and (4) supports a temporal interpretation of ACP. The term itself, "applicable commitment period," uses a word with temporal meaning: "period" means a "chronological division." The length of that chronological division is described in temporal terms – 3 *years* or 5 *years*. And, perhaps most telling of all, § 1325(b)(4)(B), the provision that specifically contemplates plans shorter than 3 or 5 years, uses the same temporal terms – a debtor's ACP "maybe less than 3 or 5 *years* . . . *but* only if the plan provides for payment in full of all allowed unsecured claims over a shorter *period*.
>
> When a statute's language is plain, the sole function of the court is to enforce it according to its terms. Here, the Court finds that the plain language used to describe and define the scope of the commitment a debtor must make of disposable income in a chapter 13 plan clearly indicates that that commitment is temporal in nature.

*In re Schanuth*, *supra,* at 607 (footnotes omitted).

The temporal requirement contained in (b)(4), which is applicable to above-median income debtors, is five (5) years. A plan which provides less than full payment to unsecured creditors and is for a period of less than five (5) years cannot be confirmed. The debtors in this case must propose a plan with a length of five (5) years.

## **CONCLUSION**

"Projected disposable income," as referenced in § 1325(b)(1), differs from "disposable income" as referenced in § 1325(b)(2). The disposable income as calculated on Form B22C, after consideration of anticipated changes in future disposable income reasonably known at the time of confirmation, constitutes the debtor's projected disposable income. The specific lines referenced as incorrect on the Form B22C should be modified as stated above. The plan should also be modified to provide for a

MEMORANDUM DECISION RE: . . . - 14

five (5) year plan, as the plan does not provide for payment in full to all unsecured creditors and the debtor is an above-median debtor.  The Trustee's Objection to Confirmation of Plan is sustained, and the debtor is granted leave to file a modification of his plan consistent with the conclusions above.

MEMORANDUM DECISION RE: . . . - 15